IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-00075-PAB-NRN

SAMUEL CRIMALDI,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant's Motion for Summary Judgment [Docket No. 44] and Defendant's Fed. R. Evid. 702 Motion with Respect to Plaintiff Expert Damian Arguello [Docket No. 41]. Plaintiff Samuel Crimaldi filed responses, Docket Nos. 51, 42, and defendant State Farm Mutual Automobile Insurance Company filed replies. Docket Nos. 56, 43. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS[1]

On August 31, 2019, plaintiff Samuel Crimaldi and his wife, Lois Winegarner, were rear-ended by another automobile. Docket No. 51 at 4, ¶ 2. On that same day, Ms. Winegarner reported a claim to State Farm Mutual Automobile Insurance Company ("State Farm").[2] Docket No. 44 at 3, ¶ 4. Ms. Winegarner reported that Mr. Crimaldi

---

[1] The following facts are undisputed unless otherwise noted.

[2] Mr. Crimaldi purports to deny this fact, Docket No. 51 at 2, ¶ 4, but does not deny that Ms. Winegarner reported the claim on August 31, 2019. Therefore, the Court deems this fact admitted.

suffered injuries in the form of "back sprain/strain (soft tissue injury), neck sprain/strain" and received medical care in the form of "ambulance to Emergency Room Only."[3]  *Id.* at 3, ¶ 6.  A letter from State Farm addressed to Mr. Crimaldi indicated that a claim was submitted, with the insured being Mr. Crimaldi, and with an August 31, 2019 date of loss.[4]  Docket No. 51 at 4, ¶ 3.  State Farm followed up with Ms. Winegarner for additional information, and on September 19, 2019, Ms. Winegarner indicated that another insurance company "handled everything for the vehicle no estimate coming from Caliber," leading to State Farm closing the claim handling.[5]  Docket No. 44 at 3, ¶ 7.

---

[3] Mr. Crimaldi denies this fact on the ground that, while the claim notes do state that, it is "unknown exactly what Ms. Winegarner said."  Docket No. 51 at 2, ¶ 6.  On summary judgment, a party opposing an asserted fact needs to either admit or deny the statement and cite evidence in support of any denial.  A denial cannot be based on the party's lack of knowledge.  *See Torres-Harris v. New Mexico*, 2010 WL 11619107, at *6 n.5 (D.N.M. Aug. 13, 2010) ("Ignorance of a fact is an improper basis on which to dispute a properly supported proposed fact for summary judgment purposes.  If Plaintiff seeks to dispute a fact at the summary judgment stage, she must come forward with specific evidence that creates a question of fact for trial."); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) ("Importantly, in opposing a motion for summary judgment, the non-moving party cannot rest on ignorance of facts, on speculation, or on suspicion.") (citation and internal quotations omitted).  Therefore, the Court deems this fact to be admitted.

[4] State Farm admits to statements found elsewhere in this letter, but does not admit or deny the statements asserted by Mr. Crimaldi.  However, pursuant to the Court's Practice Standards, "[a]ny party opposing the motion for summary judgment shall . . . admit or deny the asserted material facts set forth by the movant."  Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.iv.  Therefore, the Court deems this fact to be admitted.

[5] Mr. Crimaldi denies this fact, Docket No. 51 at 2, ¶ 7, but bases his objection on his view that it was inappropriate for State Farm to close the claim.  The Court finds that this is legal argument and does not constitute an appropriate denial.  The Court therefore deems this fact admitted.

Mr. Crimaldi was previously in a motor vehicle accident on January 27, 2018. *Id.*, ¶ 1. Mr. Crimaldi sued the tortfeasor for the January 27, 2018 accident.[6] *Id.* at 4, ¶ 13. Before the end of 2021, Mr. Crimaldi retained Dr. David Reinhard to perform a "Medical Records Review."[7] *Id.*, ¶ 14. Dr. Reinhard's report apportioned Mr. Crimaldi's injuries with respect to Mr. Crimaldi's 2013, 2018, and 2019 crashes. Docket No. 51 at 4-5, ¶ 8. Mr. Crimaldi ultimately settled with the tortfeasor for the January 27, 2018 accident for $1,000,000. Docket No. 44 at 3, ¶ 2. Between August 31, 2019 and February 24, 2022, Mr. Crimaldi was being treated for injuries from both accidents. *Id.* at 4, ¶ 11. At least as of September 5, 2019, Mr. Crimaldi was telling providers he had "different" pain after the August 31, 2019 accident than what he was attributing to the January 27, 2018 accident. *Id.*, ¶ 12. Mr. Crimaldi and his attorneys did not give State Farm any details about Mr. Crimaldi's alleged injuries, treatment, or other information between September 1, 2019[8] and March 8,[9] 2022.[10] *Id.* at 5, ¶ 18.

---

[6] Mr. Crimaldi denies this fact, but cites no evidence to support his denial. The Court deems this fact to be admitted. Docket No. 51 at 3, ¶ 13.

[7] State Farm claims that Dr. Reinhard was retained on December 23, 2021. Docket No. 44 at 4, ¶ 14. Mr. Crimaldi claims that Dr. Reinhard was first retained before September 2, 2021, but does not dispute that Dr. Reinhard performed a "Medical Records Review." Docket No. 51 at 3, ¶ 14.

[8] State Farm claims this date is September 1, 2018. Docket No. 44 at 5, ¶ 18. State Farm does not dispute that it received information about Mr. Crimaldi's August 31, 2019 injuries when the August 31, 2019 claim was reported. *Id.* at 3, ¶ 6; Docket No. 56 at 2, ¶ 18. Thus, State Farm did receive information from Mr. Crimaldi after September 1, 2018. The Court presumes 2018 is a typographical error and the pertinent date is September 1, 2019.

[9] State Farm writes March 9, 2022. Docket No. 44 at 5, ¶ 18. The Court presumes this is also a typographical error because it is undisputed that, on March 8, 2022, State Farm received a letter from Mr. Crimaldi regarding a potential UIM claim. *Id.* at 3-4, ¶ 9. Thus, the Court presumes the pertinent date is March 8, 2022.

[10] Mr. Crimaldi denies this fact, stating that, on August 31, 2019, Mr. Crimaldi informed State Farm of the August 31, 2019 crash, injuries, and treatment. Docket No. 51 at 3, ¶ 18. Evidence that Mr. Crimaldi provided State Farm with information on

On March 8, 2022, Mr. Crimaldi sent a "Notice of Potential Underinsured Motorist Claim" to State Farm.  *Id.* at 3-4, ¶ 9.  In April 2022, Mr. Crimaldi provided State Farm with a medical records release, an injury questionnaire, and a provider list.[11]  Docket No. 51 at 4, ¶ 5.  On April 22, 2022, Mr. Crimaldi's attorney submitted information to State Farm including, among other things: 184 pages of expert reports Mr. Crimaldi obtained in previous litigation, medical records, and bills.[12]  *Id.*, ¶ 7.  State Farm refused to schedule an independent medical examination ("IME") until it obtained records from Dr. Ken Gable from 2014-2019.[13]  *Id.* at 5, ¶ 11.

Mr. Crimaldi settled the underlying liability claim from the August 31, 2019 accident in June 2022 for $50,000.  Docket No. 44 at 6, ¶ 24.  On January 16, 2025, State Farm advised Mr. Crimaldi that, based upon the information it had, it appeared

---

August 31, 2019 does not support the proposition that Mr. Crimaldi informed State Farm of his injuries or treatment between September 1, 2019 and March 8, 2022.  The Court therefore deems it admitted that Mr. Crimaldi did not give State Farm information about his alleged injuries and treatment between September 1, 2019 and March 8, 2022.

[11] State Farm denies this fact, Docket No. 56 at 2, ¶ 5, arguing that the information was incomplete and inaccurate.  This is legal argument and does not constitute an appropriate denial.  Thus, the Court deems it admitted that Mr. Crimaldi sent a medical records release, an injury questionnaire, and a provider list to State Farm.

[12] State Farm admits that "[s]ome documents were sent on 4/22/22," but emphasizes that the records were not complete.  Docket No. 56 at 2, ¶ 7.  This comment is nonresponsive and does not constitute a denial.

[13] State Farm denies this fact on the ground that Mr. Crimaldi's cited exhibits that indicated it was waiting on records from multiple providers, not just Dr. Gable.  Docket No. 56 at 3, ¶ 11.  The fact that State Farm was waiting on records from multiple providers does not establish that State Farm was not also waiting on records from Dr. Gable.  Therefore, the Court deems this fact admitted.  However, Mr. Crimaldi also asserts in this fact that Mr. Crimaldi "did not treat" between 2014 and 2019.  Docket No. 51 at 5, ¶ 11.  State Farm properly disputes this fact on the ground that the exhibits Mr. Crimaldi cites do not establish that Mr. Crimaldi "did not treat" between 2014 and 2019.  Docket No. 56 at 3, ¶ 11.  Therefore, the Court does not deem it admitted that Mr. Crimaldi did not treat between 2014 and 2019.

that Mr. Crimaldi was fairly compensated by the underlying policy limits of the tortfeasor.

*Id.*, ¶ 25.

Mr. Crimaldi's State Farm policy provides the following language:

> 7. **Other Duties Under . . . Uninsured Motor Vehicle Coverage, . . .**
> A *person* making claim under:
> a. . . . Uninsured Motor Vehicle Coverage, . . . must:
> (1) notify *us* of the claim and give *us* all the details about the death, injury,
> treatment, and other information that *we* may need as soon as reasonably
> possible after the injured *insured* is first examined or treated for the injury.

*Id.*, ¶ 26.  Mr. Crimaldi's policy also provides that "A person making claim under:

a. . . . Uninsured Motor Vehicle Coverage . . . must: (3) provide written

authorization for us to obtain: (a) medical bills; (b) medical records."  *Id.*, ¶ 27.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the

essential elements of its claim or affirmative defense.  *Harper v. Mancos Sch. Dist. RE-*

*6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).  By contrast, where "the moving party

does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS[14]

In his complaint, Mr. Crimaldi brings claims for breach of contract, common law bad faith delay or denial of his claim, and statutory bad faith delay or denial of his claim. Docket No. 5 at 9-11, ¶¶ 54-81.

State Farm argues that Mr. Crimaldi's failure to comply with his policy precludes his recovery. Docket No. 44 at 8. Specifically, State Farm notes that "[t]he right to recovery under an insurance policy may be forfeited when, in violation of a policy

---

[14] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state."). The parties also assume that Colorado law applies. *See generally* Docket Nos. 44, 51, 56.

provision, the insured fails to cooperate with the insurer in a substantial and material respect and this failure to cooperate causes a substantial disadvantage to the insurer." *Id.* In the alternative, State Farm argues that Mr. Crimaldi's claims for common law bad faith and statutory bad faith fail as a matter of law. *Id.* at 12.

### A. Failure to Cooperate

State Farm argues that Mr. Crimaldi failed to cooperate with State Farm because, in contravention of his policy, Mr. Crimaldi did not timely notify State Farm of his claim or give State Farm details about his injuries and treatment. *Id.* at 9. State Farm asserts that these failures prevented it from participating in the investigation of Mr. Crimaldi's injuries. *Id.* at 9-10. State Farm notes that its participation was particularly important considering the challenges that arose in properly attributing Mr. Crimaldi's injuries given he was in two separate accidents. *Id.*

"Under Colorado law an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision." *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017). "When an insurer asserts a noncooperation defense, the insured will likely be held to have forfeited his or her right to recover under an insurance policy when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001)). The insurer bears the burden to prove failure to cooperate. *Id.* "Material and substantial disadvantage" is determined by

whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid.  If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist.  Specifically, it has been held that the insurer can deny coverage, following an insured's refusal to provide documents reasonably requested by the insurer, on the basis that the insurer has been prejudiced because the insured's refusal prejudices the insurer by putting the insurer in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.

*Walker*, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th ed. 2016)).

Colo. Rev. Stat. § 10-3-1118 "requires an insurer to satisfy specific requirements before asserting an insured's failure to cooperate as a defense to a claim for benefits in 'litigation that occurs on or after' September 13, 2020."  *Dale v. State Farm Mut. Auto. Ins. Co.*, 699 F. Supp. 3d 1219, 1223 (D. Colo. 2023).  These requirements include, among other things, submitting a written request for information which is not available by other means, giving the insured 60 days to respond, and giving the insured an opportunity to cure the alleged failure to cooperate.  Colo. Rev. Stat. § 10-3-1118(1)(a)-(b), (e).  State Farm has not established any undisputed facts that it met the requirements of § 10-3-1118.  Thus, State Farm is barred from raising a failure to cooperate defense.[15]  *Wenzell v. United Servs. Auto. Ass'n*,  552 P.3d 1121, 1129 (Colo. App. 2024); *Dale*, 699 F. Supp. 3d at 1223; *Worley v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00337-DDD-MDB, 2025 WL 580493, at *5-6 (D. Colo. Feb. 6, 2025).

---

[15] In framing its failure to cooperate defense, State Farm does not formally raise an affirmative defense, but states that Mr. Crimaldi failed to comply with conditions precedent.  Docket No. 44 at 11.  "This is a distinction without a difference" and State Farm still must adhere to the requirements set out in Colo. Rev. Stat. § 10-3-1118. *Worley*, 2025 WL 580493, at *5 (citing *Wenzell*, 552 P.3d at 1127).

8

In its reply, State Farm argues that § 10-3-1118 is inapplicable.  Docket No. 56 at 5-6.  Specifically, State Farm argues that § 10-3-1118's requirements are "premised on the carrier's knowledge that a claim has been made and that records are missing."  *Id.* at 6.  However, in its statement of undisputed facts, State Farm admits that Ms. Winegarner reported a claim on August 31, 2019—the day of the automobile accident.  Docket No. 44 at 3, ¶ 4.  Ms. Winegarner informed State Farm of the automobile accident and that Mr. Crimaldi was physically injured.  *Id.*, ¶¶ 4, 6.  Ms. Winegarner also informed State Farm that Mr. Crimaldi was taken to the Emergency Room.  *Id.*, ¶ 6.  Thus, State Farm knew as of August 31, 2019 that Ms. Winegarner made a claim involving property damage and physical injuries to Mr. Crimaldi, and had reason to know that there would be medical records from the Emergency Room.  Thus, State Farm knew that a claim had been made and knew, as time passed, that it had not received Emergency Room records.  State Farm could have asked Mr. Crimaldi for the emergency room records.[16]

---

[16] State Farm also argues that Mr. Crimaldi has a duty to disclose certain information under Colo. Rev. Stat. § 10-4-1003.  Docket No. 44 at 11.  Specifically, State Farm notes that, "[u]nder the Colorado Insurance Fraud statute, there is a duty to disclose relevant information, including 'material relating to the investigation of the loss, including . . . any proof of such loss.'"  Docket No. 44 at 11 (quoting Colo. Rev. Stat. § 10-4-1003(2)(d)).  However, Colo. Rev. Stat. § 10-4-1003(2)(d) states, in full: "(2) Any authorized agency may, in writing, require the insurer having an interest in a fire loss or other claim to release to the authorized agency specific, relevant information or evidence deemed important by the authorized agency which the insurer has in its possession and which relates to the fire loss or other claim in question. Relevant information may include, but shall not be limited to: . . . (d) Any other material relating to the investigation of the loss, including statements of any person who may have information about the loss and any proof of such loss."  Colo. Rev. Stat. § 10-4-1003(2)(d).  Thus, § 10-4-1003 sets forth duties for the insurer to disclose information, not for the policyholder.

State Farm argues that it was prejudiced because the August 31, 2019 claim was not a UIM claim, and Mr. Crimaldi did not give State Farm notice of his UIM claim until he sent his "Notice of Potential UIM claim" on March 8, 2022. *Id.* at 8-10. Thus, State Farm argues that it did not receive timely notice of the UIM claim, in contravention of the policy. *Id.* at 9. Mr. Crimaldi, however, asserts that the August 31, 2019 claim was a UIM claim. Docket No. 51 at 2, ¶ 7.

The Court does not find it necessary to determine whether the August 31, 2019 claim was a UIM claim because State Farm fails to establish that notice was untimely either way. "The duty to give notice under a UIM policy arises when an insured, with reasonable diligence, can ascertain that the alleged tortfeasor is underinsured." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 226 (Colo. 2001) (citation omitted). State Farm put forward no evidence as to when Mr. Crimaldi should have known that the August 31, 2019 tortfeasor was underinsured.

In *Hauger v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-02438-LTB-KMT, 2016 WL 164678, at *3 (D. Colo. Jan. 14, 2016), the insurer argued that the insured breached her obligation to promptly notify the insurer of her UIM claim. It was undisputed that the insured did not notify the insurer of the UIM claim until 19 months after the accident occurred. *Id.* However, the court noted that the circumstances of the claim arguably supported an inference that the timing of the insured's notice was nonetheless reasonable. *Id.* Specifically, the court emphasized that there was no litigation relating to the March 12, 2009 accident until February 2012.[17] *Id.* Similarly, here, Mr. Crimaldi

---

[17] The insurer in *Hauger* claimed it was prejudiced by the purportedly late notice because the insured was in two other accidents that also caused injuries. *Hauger*, 2016

did not settle the underlying liability claim for the August 31, 2019 accident until June

2022, months after the March 8, 2022 notice of potential UIM claim letter was sent.

State Farm presents no undisputed facts that Mr. Crimaldi knew that the August 31,

2019 tortfeasor was underinsured prior to sending his notice of UIM claim letter.  Thus,

State Farm is not entitled to summary judgment on this issue.  *See Stoole v. Metro.*

*Prop. & Cas. Ins. Co.*, No. 17-cv-0613-NYW, 2018 WL 3126112, at *7 (D. Colo. June

26, 2018) (stating that, while it was undisputed that the insured did not notify the insurer

of her potential UIM claim until approximately 13 months after her accident, the parties

"put forth no evidence as to when [the insured] should have reasonably known about

her UIM claim."); *Prudential Prop. & Cas. Ins. Co. v. LaRose*, 919 P.2d 915, 918 (Colo.

App. 1996) (affirming the denial of an insurer's motion for summary judgment when the

insurer "failed to present evidence in support of its motion that established the date from

which the insureds knew or with reasonable diligence should have known that the

alleged tortfeasor's liability insurance would provide insufficient coverage.").  In

summary, the Court finds that State Farm is not entitled to summary judgment on

plaintiff's claims based on plaintiff's alleged failure to cooperate.

### B.  Statutory Bad Fatih

Mr. Crimaldi brings a statutory claim for unreasonable denial and delay of

benefits.  Docket No. 5 at 10-11, ¶¶ 79-81.  Colo Rev. Stat. § 10-3-1116(a) provides that

people who suffer an unreasonable delay or denial of benefits, as defined in Colo. Rev.

Stat. § 10-3-1115, may bring an action for twice the covered benefit and attorneys' fees.

*See* Colo. Rev. Stat. § 10-3-1116.  Pursuant to § 10-3-1115, an insurer may not

---

WL 164678, at *3.  The court found that this claim alone did not dictate a finding that the
insured was prejudiced as a matter of law.  *Id.*

"unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."[18]  Colo. Rev. Stat. § 10-3-1115(1)(a).  An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Colo. Rev. Stat. § 10-3-1115(2).  The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances.  *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008).  Acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)).  The question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim.  *Estate of Morris*, 192 P.3d at 523.  The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards.  *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018).  Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury.  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  However, in appropriate

---

[18] Mr. Crimaldi discusses how State Farm unreasonably delayed handling his claim in respect to his common law bad faith claim.  *See* Docket No. 51 at 10-13.  When discussing his statutory bad faith claim, Mr. Crimaldi argues that State Farm "provides no support whatsoever that its delay or denial were reasonable" *Id.* at 14.  However, "[t]he burden to establish unreasonableness lies with plaintiff."  *Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *4 (D. Colo. Mar. 28, 2022) (citing *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished)).  Thus, the Court will examine Mr. Crimaldi's arguments as to his common law bad faith claim to determine if Mr. Crimaldi meets his burden on his statutory bad faith claim.

circumstances, as when there are no genuine disputes of material facts,

reasonableness may be decided as a matter of law.  *Estate of Morris*, 192 P.3d at 524.

Mr. Crimaldi claims that State Farm unreasonably delayed his UIM claim from the

day Ms. Winegarner submitted it, on August 31, 2019, to the time he sent the notice of

potential UIM claim letter, on March 8, 2022.  Docket No. 51 at 12.  Specifically, Mr.

Crimaldi argues that State Farm unreasonably delayed payment by not investigating his

UIM claim when State Farm first found out that Mr. Crimaldi was injured on August 31,

2019.  *Id.*  The Court is unconvinced.  Although, as discussed earlier, State Farm could

have asked Mr. Crimaldi for records regarding his emergency room visit on August 31,

2019, that issue is relevant to whether § 10-3-1118 bars State Farm's failure to

cooperate defense.  However, no reasonable jury could find that State Farm acted

unreasonably in not investigating Mr. Crimaldi's claim when State Farm followed up with

Ms. Winegarner and she told State Farm, on September 19, 2019, that the other

insurance company was handling the vehicle damage.  She apparently did not mention

personal injuries or medical bills.  As a result of this conversation, State Farm closed the

claim with Ms. Winegarner.  After closing the claim file based on that conversation,

State Farm heard nothing from Mr. Crimaldi for two and a half years.[19]  Despite Mr.

Crimaldi's assertion that the August 31, 2019 claim was a UIM claim, the undisputed

---

[19] In its statement of undisputed material facts, State Farm asserts that, after closing the claim on September 19, 2019, State Farm heard nothing from Mr. Crimaldi until receiving the notice of potential UIM claim letter on March 8, 2022.  Docket No. 44 at 3, ¶ 8.  Mr. Crimaldi denies this fact on the basis that his attorneys called State Farm on November 12, 2019 requesting information State Farm collected for the 2018 crash. Docket No. 51 at 2, ¶ 8.  A call regarding the 2018 crash could not reasonably put State Farm on notice that Mr. Crimaldi intended to pursue a UIM claim related to the 2019 crash.

facts provide no basis for State Farm to believe Mr. Crimaldi made a UIM claim, as

opposed to a collision and personal injury claim.  Thus, Mr. Crimaldi fails to raise a

genuine issue of material fact as to whether State Farm acted unreasonably by not

investigating his UIM claim before March 8, 2022.

Mr. Crimaldi also claims that State Farm unreasonably delayed his UIM claim

after he sent his March 8, 2022 letter.  Docket No. 51 at 12.  First, Mr. Crimaldi argues

that State Farm unreasonably delayed its handling of his claim by not considering Dr.

Reinhard's report until State Farm conducted its own IME[20] and by refusing to schedule

an IME until obtaining records from Dr. Gable.[21]  *Id.*  As to Dr. Reinhard's report, Mr.

Crimaldi does not suggest that State Farm knew of the Reinhard report before April

---

[20] Mr. Crimaldi asserts that State Farm was "deliberately indifferent" to Dr. Reinhard's apportionment until it received its own IME, but does not explain what the term deliberately indifferent means.  *See* Docket No. 51 at 12.  The Court construes this phrase as stating that State Farm did not consider the apportionment until receiving its own IME.

[21] Mr. Crimaldi does not explicitly argue that State Farm delayed handling of his claim by waiting an unreasonable amount of time to schedule his IME; rather, his arguments are based on State Farm's failure to consider Dr. Reinhard's report until conducting its own IME and not scheduling the IME until it received records from Dr. Gable.  Docket No. 51 at 12.  However, Mr. Crimaldi mentions in passing that State Farm did not schedule an IME until 2024, stating that, "[a]fter it opened the UIM exposure in March 2022, it was deliberately indifferent to Dr. Reinhard's apportionment for years until it got its own IME in October 2024."  *Id.*  Waiting over two and a half years to schedule an IME could potentially be considered unreasonable.  But Mr. Crimaldi's assertion that the IME was not scheduled until October 2024 is entirely unsupported. Mr. Crimaldi provides no citation to support his assertion that the IME was not scheduled until October 2024.  *See id.*  Moreover, no undisputed fact establishes that an IME was not scheduled until October 2024.  *See* Docket No. 44 at 3-6; Docket No. 51 at 4-5.  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Upchurch v. Wastequip, LLC*, 2022 WL 4099433, at *4 (10th Cir. Sept. 8, 2022) (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1997 (10th Cir. 2007)).  Thus, the Court does not find Mr. Crimaldi's allegation probative as to the date State Farm conducted its IME.  There are no other allegations or facts which establish when State Farm conducted its IME.

14

2022.  Moreover, Mr. Crimaldi does not explain how State Farm acted unreasonably in not considering Dr. Reinhard's report until it received its own IME.  However, to the extent Mr. Crimaldi is arguing that State Farm acted unreasonably in conducting its own IME rather than solely relying on Dr. Reinhard's report, the Court is unpersuaded.  The undisputed facts show that Mr. Crimaldi was undergoing treatment for injuries sustained from both the January 27, 2018 accident and the August 31, 2019 accident.  Docket No. 44 at 4, ¶ 11.  Mr. Crimaldi was attributing certain pain exclusively to the August 31, 2019 accident.  *Id.*, ¶ 12.  Mr. Crimaldi retained Dr. Reinhard, who wrote a report apportioning Mr. Crimaldi's injuries.  *Id.*, ¶ 14; Docket No. 51 at 4-5, ¶ 8.  Mr. Crimaldi provides no support for the proposition that it is unreasonable for an insurance company to question a report apportioning injuries or to request an IME after receiving such a report.  Notably,

> there is social utility in allowing no-fault insurance companies to request independent medical examinations performed by physicians of their choice.  Insurance companies must be accorded wide latitude in their ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance.  Independent medical examinations at the insurance company's request allow it to make informed decisions about whether to deny benefits based on a physical or psychological condition.

*Martinez v. Lewis*, 942 P.2d 1219, 1224 (Colo. App. 1996) (internal quotations, alternations, and citation omitted).  The Court finds that no reasonable juror could find that it was objectively unreasonable for State Farm to delay payment of benefits until it could request its own IME.  Moreover, the Court finds that Mr. Crimaldi does not show an industry standard that asserts State Farm was unreasonable in not relying solely on Dr. Reinhard's apportionment considering the undisputed facts indicate that apportioning Mr. Crimaldi's injuries was complex and that Dr. Reinhard was retained by

15

Mr. Crimaldi. Docket No. 44 at 4, ¶¶ 11-12, 14-15. There are no facts which demonstrate that a different insurance provider reviewing Mr. Crimaldi's medical records would not have also requested an IME. *Estate of Morris*, 192 P.3d at 523.

As to Dr. Gable, Mr. Crimaldi argues that State Farm's investigation was unreasonable because State Farm "refused to schedule an IME until it obtained records from Dr. Gable from 2014-2019, a period it knew Mr. Crimaldi did not treat." Docket No. 51 at 12. Mr. Crimaldi does not explain why it was unreasonable for State Farm to wait to schedule its IME until it received Mr. Crimaldi's medical reports. Notably, "[i]t is not unusual or unexpected that a defendant would defer the decision to conduct an IME until it receives the full report of Plaintiff's expert medical witnesses." *Seyfang v. DreamHome Restoration, LLC*, 2018 WL 1701970, at *4 (D. Wyo. Apr. 6, 2018). Moreover, it is not uncommon for insurers to hold off on deciding whether an insured is entitled to benefits until after receiving the insured's medical records. *See Cody v. Am. Fam. Mut. Ins. Co., S.I.*, No. 23-cv-03107-STV, 2025 WL 2996632, at *11 (D. Colo. Oct. 23, 2025) (holding that it is not unreasonable as a matter of law for the defendant to delay deciding which benefits the plaintiff was entitled to until after it had received all of the plaintiff's records). Thus, the Court is unpersuaded that Mr. Crimaldi's arguments regarding the IMEs support his theory that State Farm unreasonably delayed handling Mr. Crimaldi's claim after March 8, 2022.

Next, Mr. Crimaldi argues that it was unreasonable for State Farm not to interview Mr. Crimaldi when conducting its investigation. Docket No. 51 at 12. Mr. Crimaldi, however, provides no support for the proposition that it is an industry standard for insurance companies to interview the insured regarding his or her injuries or that

16

failing to do so is bad faith conduct. *See Martin-Harker v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00629-PAB-STV, 2025 WL 914297, at *8 (D. Colo. Mar. 26, 2025) (excluding expert opinion under Federal Rule of Evidence 702 because plaintiff's expert "offers no support for there being a 'proactive duty' to directly contact the insured and the insured's medical provider in situations, like here, where the insured is represented by counsel and the insurer has already obtained the medical documentation, or a large portion of it, from the insured" and noting that "[o]ther states recognize that there is no such duty for an insurer to contact the insured's medical provider or otherwise contact and obtain information from the insured directly where the insurer believes it already has the necessary information") (citing *Hanson v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1110, 1117 (W.D. Wash. 2017); *Jackson v. Allstate Ins. Co.*, 780 F. Supp. 2d 781, 792 (S.D. Ind. 2011); *State Farm Mut. Auto. Ins. Co. v. Misra*, 2024 WL 289032, at *3 (W.D. Tex. Jan. 25, 2024)). The undisputed facts indicate that State Farm received Mr. Crimaldi's medical records.[22] Docket No. 51 at 4, ¶ 7. Mr. Crimaldi fails to explain why it was necessary for State Farm to interview him in light of the submission of these medical records. Therefore, Mr. Crimaldi has not established that it was unreasonable for State Farm not to conduct an interview. *See Meiman v. Am. Fam. Mut. Ins. Co.*, No. 21-cv-02568-MEH, 2022 WL 7560293, at *13 (D. Colo. Oct. 13, 2022) ("The Court cannot find the absence of an interview to support bad faith").

Mr. Crimaldi argues that State Farm ordered medical records in a way that it knew would cause delay. Docket No. 51 at 12. For support, he cites the deposition of

---

[22] State Farm argues that these records were incomplete. Docket No. 56 at 2, ¶ 7.

17

Audrey Douglas, a State Farm claim specialist. *Id.* In his statement of undisputed facts, Mr. Crimaldi asserts that "Audrey Doulgas admitted State Farm was using a method she knew could cause delay to obtain Mr. Crimaldi's records after August 2022: addressing their records requests using the names of the providers instead of the names of the facilities." *Id.* at 5, ¶ 16. State Farm disputes this fact, arguing, among other things, it is an inaccurate summary of the deposition. Docket No. 56 at 3, ¶ 3. In the cited portion of the deposition, Ms. Douglas agrees with the question that, when ordering medical records, it is more effective to utilize the name of the facility as the addressed entity. Docket No. 51-13 at 2, 80:18-23. Moreover, in the deposition, Ms. Douglas agrees that not ordering medical records in that manner could delay the production of medical records. *Id.* at 2-3, 80:25, 81:1-4. However, the portion of the deposition which Mr. Crimaldi attaches to his response does not establish that State Farm failed to utilize the name of the facility as the addressed entity. *See generally id.* at 1-3. Thus, the evidence Mr. Crimaldi cites does not support his assertion, and he has failed to create a genuine issue of material fact that State Farm ordered records in a manner which could cause delay.

The remainder of Mr. Crimaldi's arguments in support of post March 2022 delay by State Farm relies on evidence which has not been properly presented to the Court. For instance, Mr. Crimaldi argues that State Farm did not establish that it had reason to question the 2019 crash, the allocation of Mr. Crimaldi's injuries, and Mr. Crimaldi's medical treatment until July 29, 2022. Docket No. 51 at 12. For support, Mr. Crimaldi cites Exhibit 16. Exhibit 16 is attached to Mr. Crimaldi's response, and consists of claim notes which appear to have been made by Ms. Douglas on July 29, 2022. *See* Docket

18

No. 51-16.  Mr. Crimaldi, however, does not mention the July 29, 2022 claim notes in his statement of additional undisputed facts.  *See* Docket No. 51 at 4-5.  The Court's Practice Standards state that if the party opposing the summary judgment motion

> believes that there exist additional disputed questions of fact . . ., the party shall, in a separate section of the party's brief styled "Statement of Additional Disputed Facts," set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law.  Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed.  Similarly, if the party opposing the motion believes that there exist additional undisputed facts, the party shall, in a separate section of the party's brief styled "Statement of Additional Undisputed Facts," set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material undisputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law.  Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is undisputed.

Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.v. (emphasis omitted).

Despite his failure to properly assert facts related to the claim notes, Mr. Crimaldi nevertheless asks the Court to consider them in determining whether State Farm unreasonably delayed handling his UIM claim.  As indicated in the Court's Practice Standards, the problem with this request is it deprives State Farm of the opportunity to admit or deny Mr. Crimaldi's assertions.  *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.vii ("The sole purpose of these procedures is to establish facts and determine which of them are in dispute").  Without adhering to the Court's Practice Standards, the Court's ability to properly determine what facts are undisputed and what facts are disputed is significantly compromised.  Indeed, the claim notes do

not appear to support Mr. Crimaldi's assertion that State Farm did not come up with questions until July 29, 2022, indicating the importance of giving State Farm the chance to properly dispute purported facts.[23]  *See* Docket No. 51-16.

Importantly, the requirement in the Practice Standards that a party opposing summary judgment state its facts in the form of statements is consistent with Fed. R. Civ. P. 56(e), which refers to "assertion[s] of fact."  Rule 56 distinguishes such assertions or statements of fact from the evidence that supports the assertions.  *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record").  Thus, for Mr. Crimaldi to simply cite the claim notes in his response frustrates the summary judgment process and violates the Court's Practice Standards.  As a result, the Court will not consider the claim notes.  As the Practice Standard on summary judgment states, "[f]ailure to follow these procedures may result in an order striking or denying the motion or brief or may cause the court to deem certain facts as admitted."  Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.ix.

Even if the Court were to consider the claim notes and even if the claim notes supported Mr. Crimaldi's assertion that State Farm did not develop questions related to the 2019 crash until July 29, 2022, the Court would still not find that State Farm acted unreasonably.  Mr. Crimaldi asserts that he provided State Farm with information to evaluate his claim on April 22, 2022.  Docket No. 51 at 4, ¶ 7.  This information included

---

[23] The claim notes contain no statement indicating that State Farm formulated questions relating to the 2019 crash, much less that State Farm was doing so for the first time.  *See* Docket No. 51-16.  Instead, the case notes appear to state findings from various documents that Mr. Crimaldi submitted.  *Id.*

"184 pages of expert reports Plaintiff obtained for the 2018 litigation, medical records to date, bills to date, and State Farm's injury questionnaire completed by Mr. Crimaldi among other things." *Id.* Mr. Crimaldi does not explain why it was unreasonable for State Farm to take until July 29, 2022 to evaluate this information when State Farm only received it on April 22, 2022. The Court finds that State Farm taking just over three months to evaluate 184 pages of expert reports, as well as medical records and bills, is not inherently unreasonable, particularly considering State Farm asserts that it needed other information not contained in the April 22, 2022 submission. *See* Docket No. 56 at 2, ¶ 7.

Mr. Crimaldi also improperly relies on the claim notes when asserting that State Farm unreasonably delayed handling his claim by forwarding it to medical management. Docket No. 51 at 12. As explained above, the Court will not consider the claim notes because they were not presented as an undisputed or disputed fact pursuant to the Court's Practice Standards. Moreover, the claim notes do not indicate that the claim was forwarded to medical management, but rather indicate that Ms. Douglas "[r]equest[ed] to move forward with medical management to understand injuries as related to this MVA." Docket No. 51-16. Mr. Crimaldi does not explain what it means to forward a claim to medical management or why such a decision would cause unreasonable delay. *See* Docket No. 51 at 12.

Finally, Mr. Crimaldi relies on Exhibit 14 in support of his argument that State Farm unreasonably delayed handling of his claim by requesting medical records from providers it already had records from. *Id.* Mr. Crimaldi does not assert that State Farm requested medical records from providers it already had records from in his statement

of additional undisputed facts.  Thus, the Court will not consider this assertion.  The Court notes, however, that Exhibit 14 does not support Mr. Crimaldi's assertion.  Exhibit 14 is attached to Mr. Crimaldi's response and appears to be a letter sent from State Farm indicating that it is pending receipt of medical records from some of Mr. Crimaldi's medical providers.  Docket No. 51-14.  The letter does not state that State Farm is already in possession of the records; rather, it indicates that State Farm has "requested records from the providers, but not all have been received in the file to date."  *Id.* at 1.  The letter suggests that State Farm has "re-requested" records from some of the providers.  *Id.* at 1.  Thus, the letter does not indicate that State Farm is requesting records it already has, but instead that State Farm is following up about records it has not received.  If anything, this supports a finding that State Farm was actively investigating Mr. Crimaldi's claim, not that it was engaging in tactics to cause unreasonable delay.

Accordingly, the Court is unpersuaded by Mr. Crimaldi's arguments that State Farm unreasonably delayed handling his claim after receiving notice of the claim in the March 8, 2022 letter.  Therefore, the Court will grant summary judgment as to Mr. Crimaldi's statutory bad faith claim.

### C. Common Law Bad Faith

To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that her insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions.  *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004).  "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis."  *Cooper*, 653 F. Supp. 3d at 878

(alterations omitted) (quoting *Williams*, 621 F. App'x at 919).  "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct."  *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)).  "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim."  *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

When analyzing Mr. Crimaldi's statutory bad faith claim, the Court determined that he failed to show a genuine dispute of material fact as to whether State Farm's conduct was unreasonable.  Thus, Mr. Crimaldi has not satisfied the first element of a common law bad faith claim, and the Court will dismiss the claim accordingly.  *See Garcia v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01504-CMA-MEH, 2021 WL 5770229, at *3 (D. Colo. Dec. 6, 2021) (dismissing common-law bad faith claim where plaintiff failed to identify a genuine dispute of material fact regarding defendant's reasonableness); *Stemple v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-02381-CMA-STV, 2019 WL 2866587, at *5 n.5 (D. Colo. July 3, 2019) ("Plaintiff cannot establish the first element of her bad faith claim, rendering it unnecessary for the Court to analyze the second element of the claim.").

**D. 702 Motion**

In addition to seeking summary judgment, State Farm seeks to exclude several opinions from the report of Damian Arguello, Docket No. 41-1, Mr. Crimaldi's expert on insurance industry standards.  Docket No. 41.  Mr. Arguello's report consists of opinions on whether State Farm violated various industry standards, which relates to whether State Farm acted in bad faith.  *See generally* Docket No. 41-1.  Because the Court has granted summary judgment as to Mr. Crimaldi's bad faith claims, the entire report is rendered irrelevant.  Accordingly, the Court will deny State Farm's 702 motion as moot.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 44] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Mr. Crimaldi's second and third[24] claims for relief as **DISMISSED with prejudice**.  It is further

**ORDERED** that Defendant's Fed. R. Evid. 702 Motion with Respect to Plaintiff Expert Damian Arguello [Docket No. 41] is **DENIED as moot**.

DATED March 27, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[24] Mr. Crimaldi inadvertently labelled his third claim for relief as his fourth claim for relief.  *See* Docket No. 5 at 10.